RECEIVED

MAR - 6 2012 ✓

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| TIMOTHY D. EARLY | CIVIL ACTION NO. 6:09-CV-00288 |
|---|---|
| VERSUS | JUDGE DOHERTY |
| WISE WELL INTERVENTION SERVICES, INC., ET AL | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING

Currently pending before the Court is a motion for partial summary judgment [Doc. 212] filed by plaintiff Timothy D. Early. By way of his motion, plaintiff seeks a judgment of this Court as to the applicability of certain aspects of the Longshore and Harbor Workers Compensation Act ("LHWCA") to the claims among and between the parties.[1] [Doc. 212] Defendants Wise Well Intervention Services, Inc. ("Wise") and SeaBright Insurance Company ("SeaBright") join in plaintiff's motion. [Doc. 216] Defendants Harvest Oil & Gas, LLC ("Harvest") and Steadfast Insurance Company ("Steadfast") oppose the motion. [Doc. 215]

I.    **Facts**

The following facts, taken from plaintiff's statement of uncontested material facts, are not in dispute[2]:

1. Plaintiff Timothy Early was employed by Wise Well Intervention Services.

2. Early was on a Wise Well job at the time of his injury.

3. The accident occurred on the M/V SUPERIOR INTEGRITY, a lift boat owned and operated by Superior Energy Services.

---

[1]Although plaintiff frames his motion as seeking a judgment finding "[p]laintiff [has] satisfied both maritime 'situs' and 'status' tests for coverage under the Longshore and Harbor Workers Compensation Act," [see e.g. Doc. 212, p.1], at a telephone conference held on March 6, 2012, all counsel agreed that the pending motion actually addresses questions of "jurisdiction" and applicability, as opposed to coverage for benefits.

[2]See LR 56.1, LR 56.2.

United States, within Louisiana territorial waters.

      5. Harvest Oil and Gas chartered the vessel from Superior Energy.

      6. Wise Well elected to pay, and Plaintiff elected to receive workers compensation benefits under the Longshore & Harbor Workers Compensation Act.

    . . . .

      8. Early began his involvement with starting up the Tool Division of Wise Well six months prior to the accident date. Early, depo, Exh. A, p. 48, l. 7-9

      9. During that time Early went offshore on six or eight jobs, for Hilcorp, WT, Elsberry Production and other customers. *Id.* p. 49, l. 3 - 9; p. 50, l. 11- 25

    . . . .

      11. Early would stay offshore until the job was completed. He estimated the longest job was approximately fourteen days. p. 50, l. 25 - p. 51, l. 7

[Docs. 212-3; 215-1]

**II.**     **Applicable law and Analysis**

    Plaintiff, a Tool Division Manager for Wise Well Intervention Services, Inc. (a company which performed coiled tubing operations in the petroleum industry)[3], alleges on or about February 24, 2008, he sustained injuries while performing his job upon actual navigable waters.  He asserts the law applicable to his claim is 33 U.S.C. § 901, *et seq.* (the Longshoremen's and Harbor Workers' Compensation Act or LHWCA).[4]

> To receive benefits under the LHWCA, a worker must satisfy both a situs and status test.  The situs test concerns geographic areas covered by the LWHCA, whereas the status test concerns an employee's type of work activities.  The situs test includes injuries "occurring upon the navigable waters of the United States . . . ."

---

[3]On December 9, 2009, Wise Well Intervention Services, Inc. filed a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code. *See In Re: Wise Well Intervention Services Inc.*, Case No. 09-39408, S.D.TX.

[4]Although plaintiff is currently receiving benefits pursuant to the LHWCA, according to Harvest and Steadfast, should this Court find the LHWCA is not the law applicable to plaintiff's tort claim, "then plaintiff's claims against Harvest are precluded pursuant the [sic] statutory employer provision contained within the Master Service Agreement between Harvest and Early's employer, Wise Well." [Doc. 215, p.1] Although not stated, presumably Harvest and Steadfast are arguing if the LHWCA is inapplicable, then Louisiana state law would be applicable, which would preclude plaintiff's claim against them, in light of the statutory employer provision contained in the MSA between Harvest and Wise Well.

*Anaya v. Traylor Brothers, Inc.*, 478 F.3d 251, 254 (5th Cir. 2007). "The status test define[s] an employee as 'any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and ship-breaker.'" *Bienvenu v. Texaco, Inc.*, 164 F.3d 901, 904 (5th Cir. 1999)(quoting 33 U.S.C. § 902(3)).

In addition to those workers who satisfy the "status test" as delineated in the Longshoremen's and Harbor Workers' Compensation Act, the United States Supreme Court has found the 1972 amendments to the LHWCA, which added the status requirement, "did not withdraw coverage of the LHWCA from those workers injured on navigable waters in the course of their employment, and who would have been covered by the A "[p]laintiff [has] satisfied both maritime 'situs' and 'status' tests for coverage under the Longshore and Harbor Workers Compensation Act." "[p]laintiff [has] satisfied both maritime 'situs' and 'status' tests for coverage under the Longshore and Harbor Workers Compensation Act." ct before 1972." *Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor v. Perini*, 459 U.S. 297, 315 (1983).[5] "[B]efore 1972, any workman injured in the course of his employment actually engaged in the performance of his assigned duties on navigable waters enjoyed coverage under the LHWCA. He was not required to perform the traditional maritime work described in § 2(3) of the Act." *Bienvenu* at 907; *see also id.* ("We believe that all *Perini* requires is that the claimant show that he was injured on navigable waters while in the course of his employment.")

---

[5]The *Perini* court continued:

> We hold only that when a worker is injured on the actual navigable waters in the course of his employment on those waters, he satisfies the status requirement in § 2(3), and is covered under the LHWCA, providing, of course, that he is the employee of a statutory "employer," and is not excluded by any other provision of the Act. We consider these employees to be "engaged in maritime employment" not simply because they are injured in a historically maritime locale, but because they are required to perform their employment duties upon navigable waters.

*Id.* at 650-51 (footnotes omitted).

3

In *Perini*, the Supreme Court clarified, "Our holding . . . extends only to those persons 'traditionally covered' before the 1972 amendments. We express no opinion whether such coverage extends to a worker injured while transiently or fortuitously upon actual navigable waters." *Id.* at p.324, n.34.  The Fifth Circuit, however, has had opportunity to address the foregoing issue in *Bienvenu*, finding:

> [A] worker injured in the course of his employment on navigable waters is engaged in maritime employment and meets the status test only if his presence on the water at the time of injury was neither transient or fortuitous. The presence, however, of a worker injured on the water and who performs a "not insubstantial" amount of his work on navigable waters is neither transient nor fortuitous.

*Bienvenu* at 908 (footnote omitted); *see also id.* ("While it is not free from doubt, we believe that the signals from the Supreme Court in *Perini* and again in *Herb's Welding* indicate that the Supreme Court would hold that a workman who is aboard a vessel simply transiently or fortuitously, even though technically in the course of his employment, does not enjoy coverage under the LHWCA."). Although the Court of Appeals "decline[d] to set . . . the exact amount of work performance on navigable waters sufficient to trigger LHWCA coverage, instead leaving that task to the case-by-case development for which the common law is so well-suited," it did provide "some guiding thoughts on the matter." *Id.* (citation omitted). "First, the threshold amount must be greater than a modicum of activity in order to preclude coverage to those employees who are merely commuting from shore to work by boat.  Also, the routine activity of assisting in tying the vessel to the dock and loading or unloading one's tools and personal gear onto the vessel do not count as meaningful job responsibilities."[6] *Id.* at 908.

In this matter, the sole issue between the parties, with regard to the applicability of the LHWCA to plaintiff's claim, is whether plaintiff's presence on the M/V SUPERIOR INTEGRITY

---

[6]Although the plaintiff in *Bienvenu*, a pumper specialist responsible for maintaining and calibrating equipment on fixed production platforms, was injured once while moving his tool box from the dock to the MISS JACKIE (a vessel used to transport plaintiff to the different platforms), and a second time while tying the MISS JACKIE to the dock, plaintiff spent 8.3% of his time at work working on production equipment while aboard the MISS JACKIE.  The appellate court found, "This is not an insubstantial amount of Bienvenu's work time and is sufficient to trigger LHWCA coverage." *Id.* at 902-03, 908.

on the day of the accident was, or was not, transient or fortuitous.  Harvest and Steadfast take the position plaintiff's presence was "fortuitous," arguing: "Early was not even suppose [sic] to be on this job, and was present for four days prior to the alleged injury" [Doc. 215, p.3]; plaintiff has "fail[ed] to cite any evidence" in support of his claim that "'virtually all of Plaintiff's offshore jobs were performed on lift boats or jack up vessels'" [Id.]; plaintiff's presence on the vessel "was indeed 'fortuitous'" as it was "brought about by a stuck piece of equipment in the well" [Id.]; unlike the injured workers in *Bienvenu* and *Perini* who "were exposed to the elements and risk of maritime employment," Mr. Early "was injured when a co-employee allegedly fell down the stairs on top of him." [Id. at 4]

However, plaintiff testified in the six months he worked for Wise, he went offshore on six to eight different jobs [Doc. 212-2, pp. 49, 50], he would stay offshore until the job was completed, and his longest job was approximately fourteen days. [Id. at 50-51] Plaintiff estimated 60 to 75% of his work with Wise was offshore, and he "only occasionally" did land jobs. [Id. at 53, 59] With regard to the job plaintiff was performing when injured, he testified 100% of his work on that job was performed aboard the M/V SUPERIOR INTEGRITY. [Id. at 62]

Pursuant to the foregoing facts, the Court finds plaintiff has carried his burden and shown he performed a "not insubstantial" amount of his work on navigable waters, and his presence on the water at the time of injury was neither transient nor fortuitous. *Bienvenu* at 908.[7] Accordingly, the

---

[7]Two cases discussed by the *Perini* and *Bienvenu* courts as examples of that body of cases which survived the 1972 amendments to the LHWCA (*i.e.*workers injured on navigable waters in the course of their employment, but who do not perform the traditional maritime work described in 33 U.S.C. § 902(3)) provide further support for this Court's ruling. In *Parker v. Motor Boat Sales*, 314 U.S. 244 (1941), a janitor, employed by a retailer of pleasure craft, was directed to assist a salesman in placing outboard motors on a boat.  When the salesman, who was the superior of the two employees, took the boat out on the water to test the motors, the salesman, "at the very least," acquiesced in the janitor remaining in the boat to keep a look out for hidden objects in the water.  The boat capsized, and the janitor died.  Despite the day of the accident being the only instance in which the janitor's duties ever brought him in contact with navigable water, the Supreme Court found coverage existed pursuant to the LHWCA.  The Court stated that coverage would not be denied because:

> [H]abitual performance of other and different duties on land cannot alter the fact that at the time of the accident he was riding in a boat on a navigable river, and it is in connection with that clearly maritime activity that the award was here made.  Moreover, Section 2(4) of the Act, 33 U.S.C.A. § 902(4), expressly provides for its application to

Court finds the law applicable to plaintiff's tort claim is the Longshoremen's and Harbor Workers' Compensation Act.

**III.     Conclusion**

In light of the foregoing, plaintiff's motion for summary judgment [Doc. 212] is GRANTED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___6___ day of March, 2012.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

"employees (who) are employed . . . in whole or in part, upon the navigable waters of the United States."

*Bienvenu* at 905 (quoting *Parker* at 247); *Parker* at 245.

In *Pennsylvania R. Co. v. O'Rourke*, 344 U.S. 334 (1953), the Supreme Court held a railroad worker injured on navigable water was covered by the LHWCA. The claimant, a freight brakeman, was part of a five-man crew whose duties included work on the railroad's car floats, which moved freight and passengers from and to the railyard by water. At the time of the accident, the crew was removing boxcars from floats. In reversing the Court of Appeals (which had found claimant was not covered by the LHWCA, because he was a railroad worker and not engaged in maritime employment), the Supreme Court stated:

> We are clear, however, that the emphasis on the nature of respondent's duties here misses the mark. The statute applies, by its own terms, to accidents on navigable waters when the employer has any employees engaged in maritime service. . . . The Court of Appeals, we think, is in error in holding that the statute requires, as to the employee, both injury on navigable water and maritime employment as a ground for coverage by the Compensation Act. An injured worker's particular activity at the time of injury determines of course whether he was injured in the course of his employment within s 902(2), and whether he was a member of the crew of the vessel within the exceptions of ss 902(3) and 903(a)(1). This explains the emphasis on the factor of the individual's job in *Parker v. Motor Boat Sales, Inc.* . . . .

*Pennsylvania* at 339-40; *see also Bienvenu* at 905-06.

6